ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL X

| LUNA COMMERCIAL II LLC  APELADO  V.  VIDEO TECHNICAL SERVICES, INC., LUIS FELIPE MOJICA MARTÍNEZ, GREGORIA LOZADA FIGUEROA Y LA SOCIEDAD LEGAL DE GANANCIALES COMPUESTA POR AMBOS  APELANTES  V.  ORIENTAL BANK APELADO | TA2026AP00058 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón  Caso Núm.: BY2024CV01256  Sobre: Cobro de Dinero; ejecución de prenda |

Panel integrado por su presidenta, la Jueza Grana Martínez, el Juez Ronda Del Toro y la Juez Lotti Rodríguez.

Lotti Rodríguez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 26 de febrero de 2026.

Comparecen Video Technical Services, Inc., Luis Felipe Mojica Martínez, Gregoria Lozada Figueroa y la Sociedad Legal de Gananciales compuesta por ambos (en conjunto, parte apelante) mediante recurso de *Apelación* presentado el 16 de enero de 2026, en el cual nos solicita que dejemos sin efecto la *Sentencia Parcial* y *Sentencia Final* emitida por el Tribunal de Primera Instancia, Sala de Bayamón (TPI o foro primario) el 17 y 19 de diciembre de 2025. En esencia, mediante los referidos dictámenes, el foro primario condenó a la parte apelante a pagar el préstamo vencido con intereses y otros gastos, así como desestimó la demanda contra tercero.

**I.**

El 5 de marzo de 2024, Luna Commercial II, LLC (en adelante, Luna Commercial) presentó una *Demanda* contra de la parte apelante, al amparo de las disposiciones que rigen las acciones por incumplimiento de contrato, cobro de dinero y ejecución de prenda hipotecaria. En dicha *Demanda*, Luna Commercial solicitó que se declarara vencido el total adeudado y se autorizara la ejecución de dos (2) pagarés hipotecarios garantizados con propiedades localizadas en Bayamón.[1] El 12 de abril de 2024, la parte apelante compareció y solicitó un término de treinta (30) días adicionales para someter sus alegaciones responsivas, lo cual el TPI concedió mediante *Orden* del 15 de abril de 2024, notificada el 17 de abril de 2024.[2]

El 21 de mayo de 2024, Luna Commercial sometió *Demanda Enmendada*, la cual el foro primario aceptó y concedió a la parte apelante un término de treinta (30) días para contestar.[3] El 20 de junio de 2024, la parte apelante solicitó prórroga adicional para contestar, la que fue concedida por el foro primario mediante *Orden* del 21 de junio de 2024.[4] En cumplimiento, el 19 de julio de 2024, la parte apelante presentó *Contestación a la Demanda*.[5] Asimismo, el 9 de agosto de 2024 presentó una *Demanda contra Tercero*, incluyendo como tercero demandado a Oriental Bank de Puerto Rico (en adelante, Oriental Bank), en su carácter de acreedor original de la facilidad de crédito objeto de la controversia.[6]

El 12 de septiembre de 2024 se celebró *Vista Inicial* a la que compareció únicamente Luna Commercial, en el cual indicó que no vislumbra utilizar mecanismos de descubrimiento de prueba.[7] El 20 de septiembre de 2024, Oriental Bank compareció y el 20 de octubre de 2024, presentó su

---

[1] Entrada #1 del Sistema Unificado de Manejo y Administración de Casos del Tribunal de Primera Instancia (SUMAC TPI).
[2] Entrada #9 y #10 de SUMAC TPI.
[3] Entrada #14 y #15 de SUMAC TPI.
[4] Entrada #16 y #17 de SUMAC TPI.
[5] Entrada #18 de SUMAC TPI.
[6] Entrada #20 de SUMAC TPI.
[7] Entrada #26 de SUMAC TPI.

*Contestación a la Demanda contra Tercero.*[8] En su escrito, Oriental aclaró que durante el tiempo en que Scotiabank y posteriormente Oriental Bank fungieron como acreedores comerciales, la parte apelante nunca planteó reclamación alguna relacionada con la administración del préstamo, y que la venta de la facilidad de crédito a favor de Luna Commercial se efectuó en el año 2021.[9]

El 20 de noviembre de 2024 las partes radicaron *Informe para el Manejo del Caso* y el 21 de noviembre de 2024 se celebró una segunda *Vista* con el beneficio de la comparecencia de todas las partes del caso.[10] Conforme al informe de manejo de caso presentado y el calendario de descubrimiento de prueba anticipado por las partes, el TPI concedió un término de veinte (20) días para cursar interrogatorios y cuarenta y cinco (45) días para contestarlos, decretando que el descubrimiento de prueba culminaría el 31 de julio de 2025. La vista de conferencia con antelación al juicio fue calendarizada para el 8 de septiembre de 2025.

El 16 de diciembre de 2024, Oriental Bank informó haber remitido su solicitud de descubrimiento de prueba.[11] Posteriormente, el 25 de agosto de 2025, Oriental Bank acudió ante el foro primario por el incumplimiento de la parte apelante con su deber de contestar adecuadamente los interrogatorios, requerimientos de producción de documentos y requerimientos de admisión y acreditó haber realizado múltiples gestiones de buena fe con estos, previo a su moción de incumplimiento.[12] Ante dicha omisión, el TPI decretó un cierre del descubrimiento de prueba y declaró por admitido los requerimientos de admisión sometidos por Oriental Bank y no contestados por la parte apelante.[13]

---

[8] Entrada #32 de SUMAC TPI.
[9] Íd.
[10] Entrada #35 y #38 de SUMAC TPI.
[11] Entrada #39 de SUMAC TPI.
[12] Entrada #43 de SUMAC TPI.
[13] Entrada #44 de SUMAC TPI.

El 28 de agosto de 2025, Luna Commercial presentó su *Solicitud de Sentencia Sumaria Parcial.*[14] Al día siguiente, el 29 de agosto de 2025, Oriental Bank también presentó su propia *Solicitud de Sentencia Sumaria.*[15] El 8 de septiembre de 2025, durante la tercera *Vista* sobre el estado de los procedimientos, la parte apelante solicitó acogerse a un proceso de mediación con el fin de explorar alternativas para la retención de la propiedad objeto del litigio.[16] Con la anuencia de las demás partes, el foro primario accedió a tal solicitud. En la *Minuta,* se hizo constar que la parte apelante manifestó que su objetivo principal era alcanzar un acuerdo de pago y que, de lograrse dicho acuerdo, podría desistir de su causa de acción contra Oriental Bank.[17]

Las partes fueron citadas para el 19 de septiembre de 2025 ante el Centro de Mediación de Conflictos. Celebrada la sesión de mediación, dicho Centro declaró concluido el proceso, tras determinar que la propiedad involucrada no constituye la residencia principal de la parte apelante, por tanto, no les resulta aplicable la Ley Núm. 184-2012. El 31 de octubre de 2025, tanto Luna Commercial como Oriental Bank solicitaron por separado, que se declararan admitidas y no opuestas sus respectivas solicitudes de sentencia sumaria, ante la ausencia de oposición por parte de la parte apelante[18] Ese mismo día, el foro primario dictó *Orden,* notificada el 3 de noviembre de 2025, en la cual declaró ambas solicitudes se tendrían por no opuestas.[19]

Acto seguido, la parte apelante presentó *Solicitud de Nombramiento de Defensor Judicial,* en la cual alegó que no presentó oposición a las solicitudes de sentencia sumaria porque su representante legal se encontraba fuera de Puerto Rico.[20] Argumentó, además que, durante el proceso de mediación, se

---

[14] Entrada #45 de SUMAC TPI.
[15] Entrada #47 de SUMAC TPI.
[16] Entrada #49 de SUMAC TPI.
[17] Entrada #50 de SUMAC TPI.
[18] Entrada #57 de SUMAC TPI.
[19] Entrada #58 de SUMAC TPI.
[20] Entrada #59 de SUMAC TPI.

había identificado una alegada incapacidad mental de la Sra. Gregoria Lozada Figueroa, lo cual haría necesario el nombramiento de un defensor judicial para continuar los procedimientos. Además, el 24 de noviembre de 2025, la parte apelante presentó la oposición a la sentencia sumaria.[21]

Luego de varios trámites procesales, el 4 de diciembre de 2025 se celebró *Vista* sobre nombramiento de Defensor Judicial y se nombró a la Lcda. Yolanda Martínez Delgado como defensora judicial de la codemandada Gregoria Lozada Figueroa. Luego de celebrada la *Vista*, el TPI emitió la correspondiente *Resolución sobre Nombramiento Judicial.* Además, el 15 de diciembre de 2025, la parte apelante presentó su *Oposición a Sentencia Sumaria La Parte Demandante y Réplica a la Oposición presentada por Oriental Bank.[22]*

Con el trasfondo procesal antes expuesto, el foro primario analizó la *Solicitud de Sentencia Sumaria* presentada por Oriental Bank, con el beneficio de la oposición de la parte apelante y, además, por requerimientos de admisión no contestados y declarados admitidos para récord, lo cual hizo las siguientes determinaciones de hechos:

### DETERMINACIONES DE HECHOS

1. El financiamiento objeto de este litigio se originó mediante un préstamo comercial concedido en octubre de 2005 por la suma principal de quinientos mil dólares ($500,000.00), garantizado con dos pagarés hipotecarios de $250,000.00 cada uno, gravados sobre las fincas 12,876 y 9,661 de la Sección III de Bayamón.

2. Oriental Bank quedó constituido como acreedor legítimo y subsistente de dicha obligación comercial tras el cierre de RG Premier Bank en el 2010 y la posterior fusión de Scotiabank con Oriental Bank en el 2019.

3. El 17 de diciembre de 2015, los deudores suscribieron un acuerdo de pago con Scotiabank por un término fijo de doce (12) meses, a vencer el 17 de diciembre de 2016, tras solicitar un plan de pago para poder cumplir con los pagos mensuales del préstamo.

---

[21] Entrada #70 de SUMAC TPI.
[22] Entrada #80 de SUMAC TPI.

4. El acuerdo de 2015 evidencia que, al 17 de diciembre de 2015, el préstamo había acumulado $14,466.71 en cargos por demora, $52,592.57 en intereses acumulados y una deuda de reserva de $1,982.79, reflejando un atraso sustancial a dicha fecha.

5. El 30 de marzo de 2017, los deudores suscribieron un segundo acuerdo de pago con Scotiabank, esta vez por un término fijo de treinta y seis (36) meses, tras solicitar una extensión del primer acuerdo. Este acuerdo dispuso treinta y cinco (35) pagos mensuales de $2,222.37 y un pago final de vencimiento el 30 de marzo de 2020, con intereses fijos al seis por ciento (6%).

6. El segundo acuerdo de pago incorporó el repago de una tarjeta Visa Business, la cual sería cerrada y su balance añadido al monto total del acuerdo de 2017.

7. El vencimiento pactado del 30 de marzo de 2020 llegó sin que los deudores hubiesen realizado el pago final ni alcanzado un acuerdo formal de extensión, modificación o renovación del crédito. No existe documento escrito posterior al 2017 que modifique los términos contractuales.

8. Previo al vencimiento del 30 de marzo de 2020, los deudores no realizaron gestiones afirmativas de refinanciamiento con Oriental Bank. Tampoco cursaron solicitud formal de refinanciamiento una vez vencido el acuerdo, ni la presentaron ante otra institución financiera.

9. Tras el vencimiento del acuerdo de 2017 en marzo de 2020, los deudores realizaron pagos parciales, sin renegociar los términos de la obligación ni formalizar un nuevo acuerdo de pago.

10. El acuerdo de 2017 fue expresamente aceptado por los deudores al momento de su otorgamiento, sin objeción ni reserva sobre sus términos o exigibilidad.

11. Antes del vencimiento de marzo de 2020, los deudores no comunicaron incapacidad de cumplimiento a Oriental Bank ni presentaron evidencia que justificara su incumplimiento.

12. No existe evidencia documental de que Oriental Bank estuviera contractualmente obligado a conceder un refinanciamiento automático al vencimiento de marzo de 2020, ni consta documento que demuestre actos de mala fe en el manejo de la deuda.

13. No existe carta, correo electrónico, mensaje de texto o comunicación escrita que evidencie que Oriental Bank hubiera aceptado renovar, extender o modificar el préstamo luego del acuerdo de 2017.

14. Al mes de marzo de 2020, los deudores no contaban con acuerdo de refinanciamiento vigente, y durante los años 2020 y 2021 no entregaron a Oriental Bank documentos financieros en apoyo a una solicitud formal de renegociación.

15. Los deudores no poseen evidencia de que Oriental Bank les asegurara la aprobación de una tercera modificación del préstamo, ni contaban con confirmación de reestructuración alguna al momento de la cesión del préstamo a favor de Luna Commercial en diciembre de 2021.

16. No existe evidencia médica, terapéutica, psicológica, pericial o testimonio que respalde las alegaciones de daños emocionales, ni consta evaluación profesional que los sustente.

17. El 22 de diciembre de 2021, Oriental Bank notificó a los deudores la cesión del préstamo y sus garantías a Luna Commercial II, LLC, mediante carta escrita identificando al nuevo acreedor y administrador.

18. Al momento de la cesión, el préstamo se encontraba en incumplimiento con los términos pactados en el acuerdo de 2017, y los deudores habían consentido contractualmente a la venta o transferencia del crédito, renunciando expresamente a objetar la cesión.

19. Desde la fecha de la cesión, Oriental Bank dejó de ser acreedor del financiamiento en controversia, careciendo de legitimación o injerencia en cualquier determinación posterior relacionada con el crédito comercial.[23]

De todo lo anterior, el 16 de diciembre de 2025, notificada el 17 de diciembre de 2025 el foro primario dictó *Sentencia Sumaria Parcial* a favor de Oriental Bank.[24] En esencia, el TPI razonó que Oriental Bank dejó de ser acreedor de la parte apelante en diciembre de 2021 y, desde entonces, carece de legitimación o autoridad para intervenir en decisiones relacionadas con el manejo, reestructuración o cobro del préstamo en atraso. Igualmente, que, Oriental Bank no ha participado ni ha influido en las determinaciones de negocio adoptadas por Luna Commercial y, por tanto, no puede ser responsabilizado por los actos, omisiones o decisiones comerciales del actual acreedor.

De otra parte, luego de analizar las alegaciones del escrito dispositivo de Luna Commercial, aquilatada la prueba documental sometida en apoyo de este y no controvertida por la parte apelante, el foro primario formuló las siguientes determinaciones de hechos:

---

[23] Entrada #82 de SUMAC TPI.
[24] Íd.

## DETERMINACIONES DE HECHOS

1. El 30 de marzo de 2017, Video Technical suscribió un Segundo Reconocimiento de Deuda, Confirmación de Colateral, Nueva Colateral, Garantías y Plan de Pago, en virtud del cual se le concedió un plan de pago para el balance pendiente de cierto préstamo a término de naturaleza comercial desembolsado el 31 de octubre de 2005, reestructurado el 11 de noviembre de 2005 y 17 de diciembre de 2015, a vencer el 30 de marzo de 2020, bajo los términos y condiciones allí negociados, incluyendo intereses a razón de 6% anual fijo hasta el saldo (en adelante, "el Préstamo").[25]

2. Como evidencia del plan de pago concedido para el Préstamo, el 30 de marzo de 2017 Video Technical suscribió un "Segundo Allonge a Pagaré Bancario".[26]

3. Como colateral para asegurar el pago y cumplimiento puntual de sus obligaciones bajo el Préstamo, Video Technical ratificó y/o renovó y constituyó las siguientes garantías:

a. Gravamen prendario sobre Pagaré Hipotecario por la suma principal de $250,000.00 a favor de Scotiabank de Puerto Rico, o a su orden, con intereses a razón de 12% anual fijo y vencimiento a la presentación, garantizado mediante hipoteca constituida en primer rango en virtud de la Escritura #152, otorgada en San Juan, Puerto Rico el día 11 de noviembre de 2005, ante el Notario Público José D. Hernández Toro, sobre una propiedad perteneciente a la Sociedad Ganancial Compuesta por Luis Felipe Mojica Martínez y Gregoria Lozada Figueroa, la cual consta inscrita al Tomo Karibe de Bayamón Norte, Registro Inmobiliario Digital del Estado Libre Asociado de Puerto Rico, Sección Tercera (III) de Bayamón, Finca #12,876 (antes #50,699 en la Sección I de Bayamón).

b. Gravamen prendario sobre Pagaré Hipotecario por la suma principal de $250,000.00 a favor de Scotiabank de Puerto Rico, o a su orden, con intereses a razón de 12% anual fijo y vencimiento a la presentación, garantizado mediante hipoteca constituida en primer rango en virtud de la Escritura #153, otorgada en San Juan, Puerto Rico el día 11 de noviembre de 2005, ante el Notario Público José D. Hernández Toro, sobre una propiedad perteneciente a la Sociedad Ganancial Compuesta por Luis Felipe Mojica Martínez y Gregoria Lozada Figueroa, la cual consta inscrita al Folio #281 del Tomo #198 de Bayamón Norte, Registro Inmobiliario Digital del Estado Libre Asociado de Puerto Rico, Sección Tercera (III) de Bayamón, Finca #9,661.

c. Cesión General de Rentas sobre las Fincas #'s 12,876 (antes #50,699 en la Sección I de Bayamón) y 9,661 de la Sección Tercera (III) de Bayamón ambas. SUMAC #45, anejos 4-10.

---

[25] Entrada #45, Anejos 1-2 de SUMAC TPI.
[26] Íd., Anejo 3.

4. La garantía prendaria hipotecaria aludida en el inciso "a" del párrafo "3" anterior grava la siguiente propiedad inmueble:

---URBANA: Solar radicado en el Barrio Hato Tejas del término municipal de Bayamón, Puerto Rico, marcado en el Plano de Inscripción con el número 25 del Bloque ZA del Proyecto VBC-165, con una cabida de 161.00 metros cuadrados. En lindes por el NORTE, en 23 metros, con solar 24 del Bloque ZA; por el SUR, en 23 metros, con solar 26 del Bloque ZA; por el ESTE, en 7 metros, con la Calle 36; y por el OESTE, en 7 metros, con la Avenida Comerío.----------------------------------------------------------

---Este solar está gravado por una servidumbre a favor de la Compañía de Teléfonos de Puerto Rico y a una servidumbre para aguas pluviales a favor de los vecinos colindantes; de acuerdo con el Plano de Inscripción aprobado por la Junta de Planificación.--------------------

---Enclava una estructura tipo hilera dedicada a vivienda construida en hormigón armado sobre la cual existe una servidumbre por signo aparente establecida por la Corporación vendedora en las paredes que dividen dicha estructura de la estructura enclavada en el solar número 24 por la colindancia Norte y solar número 26 por la colindancia Sur (paredes medianeras) y cuyas paredes continuarán sirviendo en esta estructura y pertenecerán en común proindiviso en toda su actual extensión y espesor al propietario de esta edificación y a los propietarios de las edificaciones colindantes.---------------

---Consta inscrita al Tomo Karibe de Bayamón Norte, Registro Inmobiliario Digital del Estado Libre Asociado de Puerto Rico, Sección Tercera (III) de Bayamón, Finca #12,876 (antes #50,699 en la Sección I de Bayamón).----

5. La garantía prendaria hipotecaria aludida en el inciso "b" del párrafo "3" anterior grava la siguiente propiedad inmueble:

---URBANA: Solar veintiséis (26) ZA. Solar radicado en el Barrio Hato Tejas del término municipal de Bayamón, Puerto Rico, marcado con el plano de inscripción con el número veintiséis (26) del bloque ZA del proyecto VBC-165 con una cabida de ciento sesenta y uno (161.00) metros cuadrados. En lindes por el NORTE, en veinte y tres metros con solar veinticinco (25) del Bloque ZA; por el SUR, en veinte y tres (23.00) metros con solar veintisiete (27) del bloque ZA; por el ESTE, en siete (7.00) metros con la Calle número treinta y seis (36); y por el OESTE, en siete (7.00) metros con la Avenida Comerio. Enclava una estructura tipo hilera dedicada a vivienda construida de hormigón armado, sobre la cual existe una servidumbre por signo aparente establecida por la Corporación vendedora en las paredes que dividen dicha estructura de la estructura enclavada en el solar número

veinticinco (25) por la Colindancia Norte y solar número veintisiete por la colindancia Sur (paredes medianeras) y cuyas paredes continuaran sirviendo a esta estructura y pertenecerán en común pro indiviso en toda su actual extensión y espesor al propietario de esta edificación y a los propietarios de las edificaciones colindantes.----------

---Consta inscrita al Folio #281 del Tomo #198 de Bayamón Norte, Registro Inmobiliario Digital del Estado Libre Asociado de Puerto Rico, Sección Tercera (III) de Bayamón, Finca #9,661.--------------------------------------

6. Luna Commercial es hoy la acreedora del Préstamo, siendo además la tenedora de buena fe y poseedora por causa onerosa y/o mediante endoso de los Pagarés Hipotecarios dados en prenda por Video Technical en garantía de las sumas de dinero reclamadas.

7. Video Technical ha dejado de pagar el Préstamo a su vencimiento y, en su consecuencia, ha incurrido en incumplimiento de dicha obligación contractual para con Luna Commercial, adeudándose solidariamente por Video Technical a Luna Commercial al 25 de agosto de 2025 la suma de $250,383.81 por concepto de principal, más la suma de $76,843.82 por concepto de intereses acumulados a dicha fecha y los cuales continúan acumulándose mensualmente a razón de la tasa de interés pactada, más la suma de $22,147.04 por concepto de cargos por demoras a la mencionada fecha, más la suma de $50,000.00 por concepto de costas, gastos y honorarios de abogado estipulados, más cualquier otra cantidad de cargos, gastos y recargos que se acumulen hasta la fecha de su total y completo pago.

8. Las sumas reclamadas por Luna Commercial a Video Technical en relación con el Préstamo están vencidas, son líquidas y exigibles.

9. Luna Commercial ha realizado gestiones de cobro a Video Technical en relación con el Préstamo, resultando estas infructuosas.

De acuerdo con las anteriores determinaciones de hechos, el foro primario mediante *Sentencia Final* declaró "Con Lugar" la *Demanda Enmendada.*[27] En consecuencia, condenó solidariamente a la parte apelante a pagarle a Luna Commercial la suma de $250,383.81 por concepto de principal, más la suma de $76,843.82 por concepto de intereses acumulados al 25 de agosto de 2025, los cuales continúan acumulándose mensualmente a razón de la tasa de interés pactada, más la suma de $22,147.04 por

---

[27] Entrada #83 de SUMAC TPI.

concepto de cargos por demoras a la mencionada fecha, más la suma de $50,000.00 por concepto de costas, gastos y honorarios de abogado estipulados, más cualquier otra cantidad de cargos, gastos y recargos que se acumulen hasta la fecha de su total y completo pago.

Inconforme con el proceder del foro primario, el 16 de enero de 2026, el apelante acudió ante este Tribunal mediante recurso de *Apelación* y señala los siguientes errores:

> PRIMER ERROR. Erró el Tribunal de Primera Instancia al conceder la Moción de Sentencia Sumaria a favor de Luna Commercial II LLC, estando en controversia hechos fundamentales y sin que la parte demandante demostrara que la acreencia era una deuda liquida y exigible, tras haberse afirmado bajo juramento que una porción importante de la acreencia se había pagado mediante una re-estructuración de la obligación.

> SEGUNDO ERROR. Erró el Tribunal de Primera Instancia al Desestimar la Demanda contra tercero a pesar de que la tercera demandada no contradijo el hecho de que pactó una restructuración con los apelantes en el año 2020 recibiendo pagos sustanciales, los cuales negligentemente no los descontaron de la deuda certificada y vendida a Luna.

> TERCER ERROR. Erró el Tribunal de Primera Instancia al dictar ambas sentencias sumarias contra una parte incapacitada, sin proveer oportunidad para que la defensora judicial pudiera presentar sus argumentos en contra de las mociones en su contra.

Oportunamente, Luna Commercial y Oriental Bank presentaron su oposición a la *Apelación.* En esencia, estos aducen que no se cometió ninguno de los errores señalados por la parte apelante. Estos entienden que, durante los ocho (8) meses que duró el descubrimiento de prueba, la parte apelante tuvo amplia oportunidad de descubrir cualquier documento sobre los alegados pagos realizados, pero estos no lo hicieron. Por ende, sostienen que el foro primario actuó correctamente al declarar "Con Lugar" la *Demanda Enmendada* a favor de Luna Commercial y desestimar la *Demanda* en contra de Oriental Bank.

**II.**

**A. Sentencia Sumaria**

Como sabemos, la sentencia sumaria es un mecanismo procesal provisto en la Regla 36 de Procedimiento Civil de 2009, 32 LPRA Ap. V, R. 36, cuyo fin es proveer una solución justa, rápida y económica de los litigios. *Serrano Picón v. Multinational Life Ins.*, 212 DPR 981, 992 (2023); *González Santiago v. Baxter Healthcare*, 202 DPR 281, 290 (2019); *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 109 (2015). A tenor, dicho mecanismo procesal permite que un tribunal, disponga parcial o totalmente de litigios civiles en aquellos casos en los que no exista alguna controversia material de hecho que requiera ventilarse en un juicio plenario y el derecho así lo permita. *León Torres v. Rivera Lebrón,* 204 DPR 20, 41 (2020). Es decir, la sentencia sumaria procede cuando "no existen controversias *reales* y *sustanciales* en cuanto a *los hechos materiales,* por lo que lo único que queda por parte del poder judicial es aplicar el Derecho". *Meléndez González et al. v. M. Cuebas, supra,* pág. 109 (citando a *Oriental Bank v. Perapi et al.*, 192 DPR 7, (2014); *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 430 (2013); *Nieves Díaz v. González Massas*, 178 DPR 820, 847 (2010)).

Al interpretar la precitada Regla, nuestro Tribunal Supremo ha expresado que debe dictarse sentencia sumariamente cuando el tribunal sentenciador tiene ante sí, de manera incontrovertible, la verdad sobre todos los hechos esenciales. *E.L.A. v. Cole*, 164 DPR 608, 625 (2005). De manera que, "una controversia de hecho es suficiente para derrotar una moción de sentencia sumaria [...] cuando causa en el tribunal una duda real y sustancial sobre algún hecho relevante y pertinente". *Pepsi-Cola v. Mun. Cidra et al.,* 186 DPR 713, 756 (2012). Se entiende que un hecho material es aquél que puede afectar el resultado de la reclamación acorde al derecho sustantivo aplicable. *Ramos Pérez v. Univisión,* 178 DPR 200, 213 (2010).

En resumen, el juzgador de los hechos no deberá dictar sentencia sumaria cuando: 1) existen hechos materiales controvertidos; 2) hay alegaciones afirmativas en la demanda que no han sido refutadas; 3) surge de los propios documentos que se acompañan con la moción una controversia real sobre algún hecho material; o 4) como cuestión de derecho no procede. *Pepsi-Cola v. Mun. Cidra, supra*, pág. 757; *S.L.G. Szendrey-Ramos v. Consejo Titulares*, 184 DPR 133, 167 (2011).

Al atender la moción de sentencia sumaria, el Tribunal deberá asumir como ciertos los hechos no controvertidos que se encuentren sustentados por los documentos presentados por la parte promovente. *E.L.A. v. Cole, supra*, pág. 626. No obstante, "la omisión en presentar evidencia que rebata aquella presentada por el promovente, no necesariamente implica que procede dictar sentencia sumaria de forma automática". *Mun. de Añasco v. ASES*, 188 DPR 307, 327 (2013) (citando a Córdova *Dexter v. Suncn. Ferraiuoli*, 182 DPR 541, 556 (2011)). A su vez, corresponde al juzgador actuar guiado por la prudencia y ser consciente de que su determinación podría implicar que se prive a una de las partes de su "día en corte", elemento esencial del debido proceso de ley. *León Torres v. Rivera Lebrón, supra,* pág. 44.

Cónsono con lo anterior, nuestro más alto foro local ha resuelto que, existen litigios y controversias que "por su naturaleza no resulta aconsejable resolverlos mediante una sentencia dictada sumariamente; ello, en vista de que en tales casos un tribunal difícilmente podrá reunir ante sí toda la verdad de los hechos a través de affidávits, deposiciones o declaraciones juradas". *Jusino et als. v. Walgreens*, 155 DPR 560, 579 (2001) (citando a *Soto v. Hotel Caribe Hilton*, 137 DPR 294, 301 (1994); *García López v. Méndez García*, 88 DPR 363, 379 (1963). Dicho foro ha identificado como posibles controversias de este tipo aquellas que incluyen: elementos subjetivos, es decir, aquellas en las que el factor credibilidad juegue un papel esencial o decisivo para llegar a la verdad, y donde un litigante dependa en gran parte

de lo que extraiga del contrario en el curso de un juicio vivo' *Audiovisual Lang. v. Sist. Est. Natal Hnos.*, 144 DPR 563, 577 (1997).

Ahora bien, la Regla 36 de Procedimiento Civil, *supra*, impone unos requisitos de forma con los cuales hay que cumplir al momento de promover una solicitud de sentencia sumaria, a saber: (1) una exposición breve de las alegaciones de las partes; (2) los asuntos litigiosos o en controversia; (3) la causa de acción sobre la cual se solicita la sentencia sumaria; (4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal; (5) las razones por las cuales se debe dictar la sentencia, argumentando el derecho aplicable, y (6) el remedio que debe ser concedido. 32 LPRA Ap. V, R. 36.3; *Oriental Bank v. Caballero García*, 212 DPR 671, 679 (2023). Si la parte promovente incumple con estos requisitos, "el tribunal no estará obligado a considerar su pedido". *Meléndez González et al. v. M. Cuebas*, *supra*, pág. 111.

Asimismo, la parte que se opone a una sentencia sumaria tiene que cumplir con los requisitos de la precitada Regla 36, *supra. Oriental Bank v. Caballero García*, *supra*, pág. 680. En otras palabras, la parte que desafía dicha solicitud no podrá descansar en las aseveraciones o negaciones consignadas en su alegación. *León Torres v. Rivera Lebrón, supra*, pág. 43. Así pues, en la oposición a una solicitud de sentencia sumaria, la parte promovida debe "puntualizar aquellos hechos propuestos que pretende controvertir y, si así lo desea, someter hechos materiales adicionales que alega no están en disputa y que impiden que se dicte sentencia sumaria en su contra". Íd., pág. 44. Entiéndase que, "la parte opositora tiene el peso de presentar evidencia sustancial que apoye los hechos materiales que alega

están en disputa". Íd. De lo contrario, corre el riesgo de que se dicte sentencia en su contra. *Oriental Bank v. Caballero García, supra*, pág. 680.

Al evaluar una moción de sentencia sumaria, el Tribunal de Apelaciones está en la misma posición del Tribunal de Primera Instancia. *Serrano Picón v. Multinational Life Ins., supra*, pág. 993; *Meléndez González et al. v. M. Cuebas, supra*, pág. 118. Tómese en cuenta que, nuestra revisión es una *de novo* y debemos basar nuestro análisis por las disposiciones de la Regla 36 de Procedimiento Civil, *supra*, así como de su jurisprudencia interpretativa. A tenor, nuestro más alto foro ha esbozado los criterios que deben guiar esta revisión. *Roldán Flores v. M. Cuebas et al.*, 199 DPR 664, 679-680 (2018); *Meléndez González et al. v. M. Cuebas, supra*, págs. 118-119.

Ahora bien, los foros apelativos están limitados en cuanto a: (1) que no se puede tomar en consideración evidencia que las partes no presentaron ante el foro primario, y (2) tampoco adjudicar los hechos materiales en controversia, ya que ello le compete al tribunal de instancia luego de celebrado un juicio en su fondo. *Meléndez González et al. v. M. Cuebas, supra*, pág. 118. De manera que, al realizar nuestra revisión *de novo* se debe "examinar el expediente de la manera más favorable hacia la parte que se opuso a la Moción de Sentencia Sumaria en el foro primario, llevando a cabo todas las inferencias permisibles a su favor". Íd.

### B. Defensor(a) Judicial

El defensor judicial es aquella persona, nombrada por el tribunal, que se desempeña como tutor especial para que represente a un incapacitado o a un menor en un pleito. *Rivera Marrero v. Santiago Martínez*, 203 DPR 462, 486 (2019); *Crespo v. Cintrón*, 159 DPR 290, 300 (2003) (citando a *R & G Premier Bank P.R. v. Registradora*, 158 DPR 241 (2002)); *Rivera y otros v. Bco. Popular*, 152 DPR 140 (2000); *Fernández Martínez v. Tribunal Superior*, 89 DPR 754, 758 (1964). "El nombramiento procede en virtud del poder

de *parens patriae* que ostenta el Estado y que tiene como único y principal objetivo asegurar el bienestar de los menores e incapaces". *Rivera Marrero v. Santiago Martínez, supra,* pág. 486. En esencia, las disposiciones que regulan la figura del defensor judicial en nuestro ordenamiento jurídico son los Artículos 110-112 del Código Civil de 2020, 31 LPRA sec. 5631-5633, las Reglas 4.4(c) y 15.2 de Procedimiento Civil, 32 LPRA Ap. V, y el Artículo 611 del Código de Enjuiciamiento Civil, 32 LPRA sec. 2666.

El origen de dicha figura jurídica surge de la necesidad de atender la defensa de un menor en cualquier asunto en que su interés sea opuesto al del padre o la madre, a cuya potestad está sometido. *Rivera Marrero v. Santiago Martínez, supra,* pág. 486 (citando a C.E. Mascareñas y otros, *Nueva enciclopedia jurídica,* Barcelona, Ed. F. Seix, 1954, T. VI, pág. 343). "Su naturaleza jurídica se halla en la designación de una persona, por mandato judicial y mediante la figura de un juez, para que procure la representación del menor [o incapaz]. . ."*Rivera Marrero v. Santiago Martínez, supra,* págs. 486-487.

### III.

En el presente recurso, nos corresponde determinar si el foro primario erró al dictar *Sentencia Sumaria* a favor de Luna Commercial, cuando según la parte apelante estaba en controversia que la deuda no es líquida y exigible. Así como, determinar si Oriental Bank fue negligente al no descontar la deuda certificada y vendida a Luna Commercial. Por último, si el foro primario incidió al dictar ambas sentencias sumarias contra una parte incapacitada, sin proveer oportunidad para que la defensora judicial pudiera presentar sus argumentos en contra de las mociones en su contra.

Adelantamos que le asiste la razón a la parte apelante, en cuanto a que la deuda no es líquida ni exigible. Veamos.

Según la parte apelante en su oposición a que se dicte *Sentencia Sumaria,* estos llegaron a un acuerdo con Oriental Bank en el año 2020, para

reinstalar una obligación comercial con garantía hipotecaria que se encontraba en atrasos, por lo que, pactaron una reestructuración de la obligación. Según estos, se acordó que ellos pagarían un pronto de $14,629.02 y subsiguientemente continuarían haciendo pagos mensuales de $2,438.17. En cumplimento con la reestructuración, la parte apelante asegura que llegaron a abonar a Oriental Bank sobre $70,000.00. No obstante, estos plantean que la restructuración de pagos a la que aluden, Oriental Bank la identificó con un número de cuenta distinto al préstamo original: 2793059-1. Por tanto, cuando Oriental Bank vendió su acreencia a Luna Commercial, no surge que este le haya acreditado al préstamo original los pagos efectuados. Además, con el fin de demostrar que se emitieron dichos pagos, la parte apelante acompañó en su oposición, los siguientes documentos: **(1) Declaración Jurada de Luis Felipe Mojica Martínez; (2) desglose de pagos realizado; (3) Cheque Núm. 7044 a favor de Oriental Bank con fecha del 25 de febrero de 2020; (4) carta de intereses por prestamos pagados.[28]**

De conformidad con el estado de derecho reseñado, debe dictarse sentencia sumariamente cuando el tribunal sentenciador tiene ante sí, de manera incontrovertible, la verdad sobre todos los hechos esenciales. *E.L.A. v. Cole, supra,* pág. 625. De manera que, "una controversia de hecho es suficiente para derrotar una moción de sentencia sumaria […] cuando causa en el tribunal una duda real y sustancial sobre algún hecho relevante y pertinente". *Pepsi-Cola v. Mun. Cidra et al., supra,* pág. 756. Se entiende que un hecho material es aquél que puede afectar el resultado de la reclamación acorde al derecho sustantivo aplicable. *Ramos Pérez v. Univisión, supra,* pág. 213. De otro lado, la parte que desafía la solicitud de sentencia sumaria no podrá descansar en las aseveraciones o negaciones consignadas en su alegación. *León Torres v. Rivera Lebrón, supra,* pág. 43. Esta parte

---

[28] Entrada # 70, Anejos, de SUMAC TPI.

opositora tiene el peso de presentar evidencia sustancial que apoye los hechos materiales que alega están en disputa". Íd.

En vista de lo anterior, concluimos que existe controversia de hechos materiales que impedían al foro primario dictar sentencia sumaria. En particular, no nos consta que Oriental Bank haya acreditado a la obligación principal existente el Cheque Núm. 7044 fechado por la cantidad de $14,629.02 y los alegados pagos de $2,438.17 efectuados desde el año 2020 bajo el número de préstamo 2793059-1.[29] Inclusive, el mismo Oriental Bank, en su *Solicitud de Sentencia Sumaria* y *Requerimiento de Admisiones*, aceptó que la parte apelante emitió unos pagos con la finalidad de saldar la deuda pendiente. En específico, este declaró lo siguiente: "[t]ras el vencimiento de marzo de 2020, los deudores realizaron pagos parciales sin haber renegociado los términos de la obligación ni haber formalizado un nuevo acuerdo de pago".[30] No obstante, no surge del expediente dichos pagos se abonaron a la deuda, lo cual laceraría los principios de justicia si esa cantidad no fue descontada.

Conviene mencionar que, en su oposición a la *Apelación*, Oriental Bank indicó que, desde el 21 de noviembre de 2024, este le suministró un historial de pago del Préstamo. No obstante, no encontramos en el expediente dicho documento. Por tanto, somos de la opinión, que la deuda no es líquida y exigible, hasta tanto se esclarezca si los alegados pagos fueron abonados a la obligación principal existente. Así pues, estamos impedidos de resolver si Oriental Bank fue negligente al no abonar dichos pagos a la deuda, por lo que, corresponde al foro primario dirimir ese hecho controvertido.

Por último, resolvemos que el tercer señalamiento de error no se cometió. Surge del expediente que, el 3 de noviembre de 2025, la parte apelante presentó una *Moción de Paralización Y Solicitando Nombramiento de*

---

[29] Véase, Entrada #70 y #80 de SUMAC TPI.
[30] Entrada #47, Sentencia Sumaria núm. 9 de SUMAC TPI; Véase, además Entrada #47 de SUMAC TPI, Anejo 8, Primer Pliego de Requerimiento de Admisiones, núm. 4.

*Defensor Judicial.*[31] Inicialmente, el foro primario declaró "No Ha Lugar" dicha moción, pero luego de evaluar una primera y segunda *Moción de Reconsideración* presentada por la parte apelante, este pautó una vista de nombramiento de defensor judicial.[32] Se desprende de la *Minuta,* que el foro primario le ordenó a la Defensora Judicial que presentara una moción informativa de su cargo, y además, **le indicó que lo que quedaba pendiente eran las sentencias sumarias**.[33] En cumplimiento con esa orden, el 4 de diciembre de 2025, la Lcda. Yolanda I. Martínez Delgado, designada como Defensor Judicial presentó *Moción Informativa de Aceptación de Nombramiento de Defensor Judicial.*[34] Al otro día, el foro primario emitió una *Resolución Interlocutoria* en la cual aceptó tal nombramiento.[35] Así las cosas, el 17 y 19 de diciembre de 2025, el TPI notificó *Sentencia Parcial* y *Sentencia Sumaria.*

De modo que, del expediente surge que, el foro primario acogió el remedio del nombramiento de defensora judicial, pese a que este fue solicitado en una etapa avanzada del litigio. En la vista de nombramiento a la defensora judicial, esta compareció, fue nombrada formalmente y participó activamente. En ella, el foro primario le explicó a la defensora judicial que estaban en proceso de evaluar las sentencias sumarias. No obstante, esta compareció únicamente para informar su cargo y no para presentar objeción, solicitar término adicional o prórroga a las sentencias sumarias presentadas.

Conviene mencionar que, la señora Gregoria Lozada Figueroa estuvo debidamente representada por el mismo abogado de la parte apelante durante todo el pleito. Según la normativa antes expuesta, el origen del defensor judicial surge de la necesidad de atender la defensa de una persona incapaz en cualquier asunto en que su interés sea opuesto al de su tutor. *Rivera*

---

[31] Véase, Entrada #58 de SUMAC TPI.
[32] Véase, Entradas #63, #66 y #67 de SUMAC TPI.
[33] Véase, Entrada #84 de SUMAC TPI.
[34] Véase, Entrada #77 de SUMAC TPI.
[35] Entrada #78 de SUMAC TPI.

*Marrero v. Santiago Martínez, supra,* pág. 486. Esa no es la situación del caso ante nos, ya que en ningún momento se alegó intereses opuestos entre las partes demandadas en el pleito. Aun así, el foro primario aceptó tal nombramiento. Por último, el que se le nombrara un defensor judicial no eximía a la parte apelante, quien tenía representación legal, presentar su oposición, ya que este no opera a su favor.

**IV.**

Por los fundamentos antes expuestos, se revoca la Sentencia del 18 de diciembre de 2025 a favor de Luna Commercial y se confirma la Sentencia Parcial del 16 de diciembre de 2025 declarando no ha lugar la Demanda contra Tercero favor de Oriental Bank.

Por tanto, se devuelve el caso al TPI para que continúen los procedimientos de acuerdo con lo aquí resuelto.

Notifíquese.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones